Dear Representative Proffer:
This letter is in response to your question asking:
 Whether boards appointed under sections 205.968 and 205.970, RSMo. 1969 (L. 1969 S.B. 40) for post-school handicapped persons are now authorized under sections 205.968 and 205.970, RSMo. Supp. 1984 (A.L. 1984 H.B. 1385) to contract with not-for-profit corporations to provide services to their infant and preschool developmentally disabled or handicapped population?
Section 205.968.2 and .3, RSMo Supp. 1984, states:
 2. The facilities or services may only be provided for those persons defined as handicapped persons in section 178.900, RSMo, and those persons defined as handicapped persons
in this section whether or not employed at the facility or in the community, and for persons who are handicapped due to developmental disability. All persons otherwise eligible for facilities or services under this section shall be eligible regardless of their age; except that, individuals employed in sheltered workshops must be at least sixteen years of age. The board may, in its discretion, impose limitations with respect to individuals to be served and services to be provided. Such limitations shall be reasonable in the light of available funds, needs of the persons and community to be served as assessed by the board, and the appropriateness and efficiency of combining services to persons with various types of handicaps or disabilities.
 3. For the purposes of sections 205.968
to 205.972, the term
 (1) "Developmental disability" shall mean:
 (a) A disability which is attributable to mental retardation, cerebral palsy, autism, epilepsy, a learning disability related to a brain dysfunction or a similar condition found by comprehensive evaluation to be closely related to such conditions, or to require habilitation similar to that required for mentally retarded persons;
 (b) Which originated before age eighteen; and
(c) Which can be expected to continue indefinitely;
 (2) "Handicapped person" shall mean a person who is lower range educable or upper range trainable mentally retarded or a person who has a developmental disability. [Emphasis added in part.]
Section 205.970.3 and .6, RSMo Supp. 1984, states:
 3. Notwithstanding any provision of law to the contrary, and irrespective of whether or not a county sheltered workshop or residence facility has been established, the board may contract with any not for profit corporation for such corporation to provide services relating in whole or in part to the services which the board itself may provide to handicapped persons as defined in this law and for such purpose may expend the tax funds or other funds.
* * *
 6. The board may contract with any not for profit corporation including any corporation which is incorporated for the purpose of implementing the provisions of sections 178.900
to 178.970, RSMo, for any common services, or for the common use of any property of either group.
Under the foregoing statutes, a board of directors of a county sheltered workshop may contract with a not-for-profit corporation to provide in whole or in part services for (1) persons defined as "handicapped persons" in Section 178.900, RSMo 1978 (which requires, in part, that the person be sixteen years of age or older), (2) persons who are defined as "handicapped persons" in Section 205.968.3 (2), RSMo Supp. 1984, whether or not such are employed at the facility or in the community, and (3) persons who are handicapped due to developmental disability.[1] The last two categories of persons are eligible without regard to their age. Section 205.968.2, RSMo Supp. 1984.
Sections 205.968 and 205.970, RSMo 1969 (repealed), referred to in your question, were enacted by Senate Bill No. 40, 1969 Mo. Laws 330. Your question appears to be whether county sheltered workshops originally organized pursuant to Senate Bill No. 40 are affected by later statutory enactments purporting to change the powers of all county sheltered workshops.
In State ex rel. Meyer v. Cobb, 467 S.W.2d 854 (Mo. 1971), it was held that the prohibition against retrospective legislation contained in Article I, Section 13, Missouri Constitution, does not apply against governmental entities, so long as private rights are not adversely affected. That case dealt with a hospital district organized under Chapter 206, RSMo, and established on March 5, 1963. Effective October 13, 1967, Chapter 206, RSMo, was amended to require an automatic dissolution of any hospital district where,inter alia, no successful election to borrow money to fund the district was conducted within five years after the establishment of the district.
The hospital district in question argued that application of the new automatic dissolution rule would be an unconstitutional, retrospective application of the laws. The court, finding that no private rights were affected by the automatic dissolution provision, concluded that application of the new automatic dissolution provision to the hospital district did not constitute an unconstitutional, retrospective application of the laws.
Finding no private rights adversely affected by the statutory expansion of the services available from county sheltered workshops,[2]
we believe that Sections 205.968 and 205.970, RSMo Supp. 1984, apply to all county sheltered workshops including those originally organized pursuant to Senate Bill No. 40.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] In Opinion No. 167, Richardson, 1976 (withdrawn), this office interpreted the predecessor of Section 205.970.6, RSMo Supp. 1984, as not authorizing the disbursement of tax moneys pursuant to contract. In response, S.C.S.S.B. 359, 1977 Mo. Laws 390, enacted the predecessor of Section 205.970.3, RSMo Supp. 1984, which makes clear that tax moneys may be disbursed pursuant to contract.
[2] It may be possible for the private not-for-profit corporations to have their contractual rights adversely affected by the enactment of Sections 205.968 and 205.970, RSMo Supp. 1984; however, any such infringement of rights is not readily apparent.